UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
------------------------------------------------------------------X

TARON HILL,                                                    COMPLAINT

               Plaintiff,

                                                         Jury Trial Demanded

        v.                                                Docket No.

THE STATE OF NEW JERSEY DEPARTMENT of
TREASURY, CAMDEN COUNTY, CITY OF CAMDEN,
CAMDEN COUNTY CORR. FAC., CITY
OF CAMDEN POLICE DEPARTMENT,
CAMDEN COUNTY PROSECUTORS OFFICE,
ASSISTANT PROSECUTOR MINDY MELLITS,
INVESTIGATOR MATHEW WOSHNAK, SGT.
KEVIN KELLEGIAN, LT. ARTHUR FOLKS, SGT.
MARTIN DEVLIN, DET. JOSE TORRES, DET.
WAYNE MATHEWS, OFFICER JOHN MARTINEZ,
and JOHN/JANE DOES NOS.
1 THROUGH 20, being unknown employees of
The County of Camden and City of Camden in their
Individual and official capacities, who were involved in
the detention, investigation, prosecution, and conviction
At issue.

                                    Defendants.
------------------------------------------------------------------X

The Plaintiff, Taron Hill, by his attorney, Justin Bonus, complaining of the

defendants, respectfully states and alleges as follows:

## NATURE OF THE CASE

1.    This is a civil action, under 42 U.S.C. 1983 and 1988, and State law, seeking

monetary damages for Plaintiff Taron Hill, due to his wrongful arrest, prosecution,

conviction and 16.5-year imprisonment caused by the pervasive misconduct of Camden

County, City of Camden, Camden County Correctional Facility, City of Camden Police

Department, Camden County Prosecutor's Office and the State of New Jersey.

2.     Plaintiff's conviction by jury in 2006 was overturned on July 9, 2021, the State of New Jersey, by way of the Attorney General's Office Conviction Review Unit, joined in Mr. Hill's motion for a new trial. After joining in the motion for a new trial, the State moved to dismiss the indictment against Mr. Hill finding that there was clear and convincing evidence that Mr. Hill was wrongfully convicted. See Exhibit A - State's motion to dismiss Camden County Indictment No.05-09-3492-I.

3.     This lawsuit seeks to hold the City of Camden liable for the above misconduct under the federal civil rights statue, 42 USC 1983 and Monell v. Dept. Of Social Services, 436 U.S. 658 (1978). The unlawful actions of police detectives and prosecutors documented in this lawsuit resulted from affirmative or de facto municipal policies, practices and customs to violate the constitutional rights of criminal suspects and defendants, or from deliberate indifference by policy-making officials, acting on behalf of the City of Camden, to such violations. As plaintiff will demonstrate, both the now defunct City of Camden Police Department, Camden County Police Department[1] and the Camden County Prosecutors Office, as a matter of policy, secretly violated identification procedures by using suggestive identification procedures and jailhouse informants to falsely arrest and convict innocent men and women.

4.     The principal individual defendants, acting pursuant to unlawful municipal policy, who caused Plaintiff's unconstitutional conviction and orchestrated the subsequent, 16.5 years imprisonment were Homicide Investigator Mathew Woshnak, Det. Torres and Lt. Arthur Folks. The behavior of these defendants in Hill's case are as

follows:

• Showing a single photographic picture to Wakita Saunders of Taron Hill, when Inv. Woshnak and Det. Torres knew that Ms. Saunders identified the person who committed the crime as Angie Moore's nephew and that Taron Hill was not Angie Moore's nephew. Despite knowing Taron Hill was not Angie Moore's nephew the police showed his single photograph to Ms. Saunders that caused her to falsely identify Taron Hill as the person who committed the crime.

▪ Solicited Barrick Wesley, and Damien Harriel two Jailhouse Informants to lie during Taron Hill's trial. Despite evidence that jailhouse informants' testimony is unreliable, the above defendants used Barrick Wesley and Damien Harriel to fabricate stories in order to garner favor with the prosecutor, and falsely convict Taron Hill.

## JURISDICTION AND VENUE

5.     This action is brought pursuant to 42 U.S.C. 1983 and 1988, the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, the New Jersey Civil Rights Act ("NJCRA"), the Mistaken Imprisonment Act, N.J.S.A. 52:4C-1, et seq., and New Jersey common law.

6.     The jurisdiction of this Court is predicated upon 28 USC 1331, 1343, 1367 (a) and by principles of pendent jurisdiction.

7.     Venue is proper in this district pursuant to 28 U.S.C. 1391 (b) and (c).

## NOTICE OF CLAIM

---

[1] Formerly known as the City of Camden Police Department.

8.     Within ninety days after the claim alleged in this complaint arose, a verified notice of claim was duly served upon the State of New Jersey, Camden County and the City of Camden.

9.     At least six months has elapsed since the service of the notices of claim, and adjustment or payment of the claim has been neglected or refused.

10.     This action has been timely commenced with respect to all claims alleged herein.[2]

## JURY DEMAND

11.     Plaintiff demands a trial by jury in this action.

## PARTIES

12.     Plaintiff Taron Hill is a resident of Gloucester County in the State of New Jersey.

13.     At all times relevant herein, upon information and belief, THE STATE OF NEW JERSEY DEPARTMENT OF TREASURY (Herein referred to as the "State") is a public entity amenable to suit under the Mistaken Imprisonment Act, N.J.S.A. 52:4C-1, et seq. (herein referred to as "MIA"), to secure compensation for wrongful convictions and incarceration. The State is headquartered and/or located at 125 West State Street, in the City of Trenton, County of Mercer and State of New Jersey.

14.     Defendant Camden County is a County in the State of New Jersey. It operates the Camden County Prosecutor's Office ("CCPO") and Camden County

---

[2] At the present time, there is an action against the Department of Treasury of the State of New Jersey in Mercer County under Superior Court Docket Number MER-L-002451-21.

Correctional Facility ("CCCF") and is responsible for the appointment, training, supervision, promotion and discipline of police officers, supervisory police officers and detectives, including defendants Mellits, Woshnak, Folks, Kellegian and Devlin.

15.    Defendant City of Camden is a City within Camden County. At the time of the charges and conviction of Mr. Hill, it operated the Camden City Police Department ("CCPD") and was responsible for the appointment, training, supervision, promotion and discipline of police officers, supervisory police officers and detectives, including defendants Torres, Mathews, and Martinez.

16. Defendants Det. Jose Torres, Det. Wayne Matthews, and Officer John Martinez were, at all relevant times, employees of the CCPD. Defendants Torres, Matthews, and Martinez are sued in their individual and official capacities.

17. Defendants Assistant Prosecutor Mindy Mellits, Investigator Matthew Woshnak, SGT. Kevin Kellegian, LT. Arthur Folks, SGT. Martin Delvin, were, at all times relevant times, employees of the CCPO. Defendants Mellitis, Woshnak, Folks, Kellegian and Delvin are sued in their individual capacities.

18.    At all times relevant herein, all individual defendants were acting under color of state law.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

## A. The Crime and The Initial Investigation

19.    On September 25, 2004, Robin Battie and Tinesha Lewis were shot at the intersection of Thurman and Lewis Streets in the City of Camden. Battie was pronounced dead at the scene, Lewis ultimately died from her wounds on October 1, 2004.

20.    The shooting occurred at approximately 12:30 A.M.

21.    At 3:08 A.M. Investigator Woshnak and Det. Torres met with Nicole Battie, the sister of Robin Battie, who identified a male black wearing all black with a mask over his face firing a gun.

22.    On September 25, 2004, at approximately 12:20 A.M. Inv. Woshnak spoke to Tinesha Lewis in the hospital. Ms. Lewis stated that she was standing on the corner talking to three guys when, what appeared to be a young black male in a black hoody, walked up and started shooting at them. She added that she immediately ran across Louis Street and attempted to take cover behind a parked vehicle. She did not realize she was shot until after she took cover behind the vehicle. Ms. Lewis did not see the face of the person shooting.

23.    On September 27, 2004, at 7 p.m., Inv. Woshnak interviewed Michael Nunez who was present during then shooting. Mr. Nunez saw a skinny light skinned male wearing a black hoody with black jeans pull a gun from his hoody and fire shots at the corner. He then noticed the shooter jog off towards Everett Street.

24.    On October 15, 2004, at approximate 10:42 a.m. Inv. Woshnak and Det. Torres took a taped statement from Wakita Saunders at the Camden Police Administration Building. Ms.  Saunders stated on the night of the incident she had just left the corner of Thurman and Louis Street and saw an individual she recognized from the area as Angie's Moore nephew with a gun after hearing shots as he ran and tucked the gun away in his waist.

25.    Inv. Woshnak despite knowing Plaintiff is not Angie Moore nephew,

took a single photograph of Plaintiff and showed it to Ms. Saunders who identified Hill as the person she saw on the night of the shooting.

26.   Inv.Woshnak knew or should have known that a single photograph shown to Wakita Saunders would suggest that Plaintiff was the person who committed the crime. And would taint the identification procedures yet chose to forego a lawful identification process and substitute it with a suggestive practice to get Ms. Saunders to identify Taron Hill as the shooter.

27. On October 21, 2004, at approximate 2:25 p.m., Inv. Woshnak took a taped statement from Karah Malik-Moore at the Camden County Prosecutor's Office. Mr. Moore stated a black male wearing a black hoody, black jeans and grey and black Huarache Nike sneakers did the shooting. Moore could not identify who the person was, however believed it was Plaintiff because he had previously saw the same type sneakers being worn by plaintiff.

28.   The police knew that Taron and his brother Anthony looked alike, and evidence proved one or the other likely committed the crime. Yet chose to show a single photograph of Plaintiff to Ms. Saunders suggesting Taron, not Anthony, was the shooter.

29.   On October 27, 2004, Inv. Woshnak, Sr. Inv. Sgt. Kevin Kellegian and Detective Torres, spoke to Taron Hill. He denied all allegations and provided a corroborated alibi. He was at his grandmother's home at 1467 Pershing Street at the time the homicide occurred watching a movie with Sonja Still. While in the house, Anthony informed him that Tinesha Lewis had been shot. When Sonja Still was questioned the same day, she confirmed Plaintiff's alibi.

30.   On November 3, 2004, Inv. Woshnak and Sr. Inv. Martin Wolf interviewed Harry Cabassa who stated: On the night of the shooting, he was driving in the area of the shooting and saw a man in all black firing a gun at the corner of Thurman and Louis Street. He described the shooter as a skinny black male, wearing all black clothing, with a small mask covering half of his face, and a gun in his right hand.

31.   On November 5, 2004, at approximate 11 A.M Inv. Woshnak spoke to Anthony Hill at the Camden County Prosecutor Office. Mr. Hill stated that on the day in question he was with Shante Fisher, all day and night, and he drove a light blue Dodge mini-van that he had borrowed from his cousin. At some point throughout the night him and Ms. Fisher went to his residence and noticed Louis Street blocked off by police where he learned someone was shooting. When he arrived at 1467 Pershing, he saw Taron and an unknown female watching tv on the couch. He told his brother and the unknown person that an unknown person was shot on Louis Street.

32.   Inv. Woshnak amongst other things noted that Anthony Hill seemed unusually nervous during the conversation and stated he would like to speak to his attorney.

33.   On Tuesday November 30, 3004, at approximately 8:30 a.m., Inv. Woshnak spoke again to Wakita Saunders at the Camden County Prosecutor's Office. Ms. Saunders was then shown an individual photograph of Anthony Hill. She was asked did she recognize the individual. She stated that she did not, but it "sort of looked" like the individual she saw the day of the shooting, like they "could be brothers". Due to the resemblance, Ms. Saunders was asked if this picture could be the individual she saw, she

immediately stated no, I know the other boy and he's a lot skinnier and he has lighter buggier eyes". Ms. Saunders emphasized Taron Hill was the person she identified first was accurate.

34.   Inv. Woshnak spoke to a Damien Harriel, on January 4, 2005, who was housed in Camden County Correctional Facility along with Plaintiff. Mr. Harriell stated Plaintiff admitted to the homicides.

35.   On February 16, 2006, Inv. Woshnak and Det. Torres spoke to Barrack Wesley. Wesley, who was used in several cases by the Camden County Prosecutor's Office as a jailhouse informant and was incarcerated with Plaintiff in the Salem County Correctional Facility, told Inv. Woshnak and Det. Torres that Plaintiff admitted to killing Battie and Lewis.

36.   Despite knowing that best practices in New Jersey held that jailhouse informants routinely lie during criminal trials in order to gain favor with authorities, the defendants named above, chose to utilize the evidence from the jailhouse informants as true. Despite warnings that jailhouse informants' testimony must be used with caution, no such caution was used when jailhouse informants were solicited as evidence against Taron Hill. The jailhouse informants later recanted and admitted their trial testimony was false.

37.   During a post-trial motion for a new trial in 2007, Anthony Blake, Bryan Hill, Stacey Fontanez, Sonya Still and Taron Hill all testified. Blake, Hill and Fontanez testified that Anthony Hill confessed to the murder.

38.   In news articles, Taron Hill trial attorney admitted that he had letters

from Anthony Hill in his possession that seemed to indicate that Anthony was responsible for the shooting. Apparently, based upon that presentation, the Camden County Prosecutors Office searched Anthony Hill's and another inmate's cell and found letters from Anthony directing the inmate to destroy documents in Taron's cell.

39. Despite the fact the Defendants knew by at least 2007 that credible evidence proved that Anthony Hill was the person who committed the crime - by his own declaration against penal interest - and consciousness of guilt, to destroy evidence that demonstrated he confessed to the crime in a letter to his brother.

40.   The New Jersey Attorney General's Office Conviction Review Unit began its investigation in 2019 to determine whether Taron Hill innocence claim was credible. Its review determined there is clear and convincing evidence that substantiates that Taron Hill is innocent and began presenting evidence to a Grand Jury seeking to indict Anthony Hill for the murders in 2021. (See exhibit A).

## **PLAINTIFF'S DAMAGES AND INJURIES**

(a) The false and malicious prosecution and conviction for murder, and other offenses and sentenced to 60 years in prison;

(b) The wrongful denial of his motion to vacate his conviction filed in the State and/or Federal court;

(c) His loss of liberty for 16.5 years;

(d) Physical injuries he suffered during assaults by other inmates, and the mental and emotional effects of such assaults and of the gruesome, terrifying homicidal and disfiguring assaults on other inmates he witnessed;

(e) Past and future illnesses and injuries as a result of his wrongful conviction and his experiences in prison;

(f) Past and future mental and emotional injuries and suffering;

(g) the loss of the services, society, companionship, and consortium of his child, fiancée, parents, grandparents, brothers and sisters and other family members and friends;

(h) The loss of employment income, and diminution of future earning ability, due to his inability to complete his education and to realize his dream of becoming an entrepreneur.

## FIRST CAUSE OF ACTION

### (Malicious Prosecution Under State Law; All Defendants)

41.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 40 of this Complaint.

42.    By virtue of the foregoing, the Individual Defendants, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued, and/or caused the initiation or continuation of, criminal proceedings against Plaintiff.

43.    The criminal Proceedings terminated in Plaintiff's favor

44.    There was no probable cause for the commencement or the continuation of the criminal proceedings.

45.    The defendants acted with malice.

46.    Defendants City of Camden, Camden County, City of Camden Police

Department, Camden County Police Department, and Camden County Prosecutor Office are liable under the principle of respondeat superior.

## SECOND CAUSE OF ACTION

## (Intentional Inflication of emotional Distress Under State Law; All Defendants)

47.   Plaintiff repeats and realleges each and every allegation contained in 1 through 46 of this Complaint,

48.   Defendants engaged in a continuous patters of extreme and outrageous conduct directed at Plaintiff at least until his release from prison in 2021.

49.   Defendants engaged in that pattern of conduct with an intention to cause, or in reckless disregard of the substantial probability that it would cause, Plaintiff severe emotional distress.

50.    Specifically, defendants individually, in concert with, conspiring with, and/or aiding and abetting one another and other persons for whose acts they are liable, while acting in an investigative or administrative capacity, suggested to witnesses Plaintiff committed the crime through unduly suggestive police identification practices or police/prosecutorial use of unreliable jailhouse informants to be used against Plaintiff, initiated or caused the initiation and continuation of false and unfounded criminal charges against Plaintiff while lacking probable cause to do so. Failed to investigate credible claims that Anthony Hill, not Plaintiff committed the crime, after trial, attempted to cover up and conceal their misconduct, and repeatedly and continually lied to and defrauded every court to review Plaintiff's conviction concerning the existence of evidence that

Anthony Hill not Plaintiff committed the crime.

51.    Plaintiff suffered severe emotional distress as a result of, and that was proximately caused by, the Defendants' aforementioned actions.

52.   By virtue of the foregoing, Plaintiff suffered the actual damages identified in paragraphs 1 through 51.

53.   Defendants City of Camden, Camden County, City of Camden Police Department, Camden County Police Department, and Camden County Prosecutor Office is liable under the principle of respondeat superior.

## <u>THIRD CAUSE OF ACTION</u>

### <u>(Abuse of Power Under State law; Defendants Devlin, Woshnak, Torres, Kellegian, Mellits, Folks, Matthews).</u>

54.    Plaintiff repeats and realleges each and every allegation contained in 1 through 53 of this Complaint.

55.   Defendants, individually, in concert with, conspiring with, and/or aiding and abetting one another and other persons for whose acts they are liable, employed regularly issued criminal legal process against Plaintiff.

56. Specifically, they presented improper single witness photo identifications to a witness to make an out of court and in court suggestive identification of Taron Hill as the shooter, despite evidence of a credible alibi. And sought Jailhouse Informants to testify against Tyron Hill at trial, despite best practices that warned against the unreliability of jailhouse informants as witnesses. And how single photographs cause misidentifications that result in wrongful convictions.

57.    Defendants used such process in a perverted manner to obtain a collateral objective outside the legitimate ends of the process used, namely, to gain an unlawful arrest, identification and conviction of Plaintiff on suggestive identification procedures and unreliable jailhouse informants. Defendants knew, believed, and intended would later be used in court against Plaintiff at his criminal trial, and which were so used.

58.    Defendants did so with an intent to do harm to Plaintiff, with actual malice, and without excuse or justification.

59.    By virtue of the foregoing, Plaintiff was caused the actual and special damages identified in paragraph (put paragraph from damages).

## FOURTH CAUSE OF ACTION

**(42 U.S.C. 1983; Denial Of Due Process And A Fair Trial Under the Fifth, Sixth and Fourteenth Amendments; malicious Prosecution and Deprivation of Liberty Under the Fourth and Fourteenth Amendments; Defendants Mellits, Devlin, Folks, Matthews, Woshnak, Torres, Kellegian).**

60.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 59 as is fully set forth herein.

61.    Defendants Woshnak and Torres knowingly and willfully manufactured, or caused the manufacturing of, an unreliable identification against plaintiff by the use of a single photographic procedure known to cause false identifications and subject people to wrongful convictions. The defendants also utilized unreliable jailhouse informants to testify against Plaintiff at the trial knowing Jailhouse Informants are inherently unreliable.

62. Defendants knew their identification procedures would be relied upon by

the CCPO and the court as a basis to arrest Plaintiff, to formally initiate his prosecution, to hold him for trial without bail, and to induce the jailhouse informants to testify at the trial in exchange for leniency on their criminal charges at the expense of Plaintiff.

63.    Defendants investigated Taron Hill's alibi and found it to be credible. They also interviewed Anthony Hill and found him to be nervous, and noted he invoked the right to counsel when questioned. Heard several witnesses who stated Anthony Hill confessed in a statement against penal interest that he, not Taron, was the true shooter. Knowing the above facts to be true, defendants continually proceeded to deny Plaintiff his liberty until 2021.

64.    The aforesaid conduct, which Defendants committed in concert with and in aid of each other, and/or in concert or conspiracy with others named and unnamed, operated to deprive Plaintiff of his rights under the Constitution and the Laws of the United States:

(a) Not to be arrested, indicted, prosecuted, detained, convicted, or imprisoned based upon false, fabricated, manufactured, misleading, or inherently unreliable "evidence," including the statements and testimony of witnesses who have been improperly influenced, coerced, or manipulated to provide such statements and testimony, in violation of the Due Process and Fair Trial Clauses of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution;

(b) Not to be deprived of his liberty absent probable cause to believe he has committed a crime, in violation of his rights under the Fourth and fourteenth Amendments to the United States Constitution; and

65.    The foregoing violations of Plaintiff's federal constitutional rights by the

Defendants and their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the initiation and continuation of Plaintiff's criminal prosecution, his loss of liberty and detention without bail, his wrongful conviction, his subsequent imprisonment, and his other injuries and damages.

66.    The forgoing violations of Plaintiff's rights amounted to Constitutional torts and were effected by actions taken under color of State law, and within the scope of the Defendants' employment and authority.

67.    Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference to Plaintiff's constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights.

68.    By reason of the foregoing, the Defendants are liable to plaintiff, under 42 U.S.C. 1983, for compensatory and for punitive damages.

## **FIFTH CAUSE OF ACTION**

**(42 U.S.C. 1983; Denial of Due Process And A Fair Trial
Under the Fifth, Sixth and Fourteenth Amendments;
Malicious Prosecution, Abuse of Process, and Deprivation
of Liberty Under the Fourth, Fifth, Sixth, and Fourteenth
Amendments; (Mellits, Woshnak, Torres, Devlin, Kellegian, Folks, Matthews)**

69.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 68 as is fully stated herein.

70.    Knowing that any colorable cause to continue the prosecution had evaporated, Mindy Mellits, in the capacity of an investigator or "witness" acted in concert and conspired with Inv. Woshnak, Det. Torres, Det. Matthews, Sgt. Devlin, Lt.

Folks, Sr. Inv. Kellegian and others, named and unnamed, to use any means, no matter how unlawful or coercive, to uphold the conviction.

71.   These illegal and unconstitutional means included, but were not limited to,

(a) Abusing judicial process by personally attesting to "facts" which they knew were untrue in order to deceive the court into denying the Plaintiff's post-conviction motion.

(b) Failing to provide phone calls, letters, and other information they possessed that proved Anthony Hill committed the crime and Plaintiff was innocent.

(c) Opposing Plaintiff for relief knowing all along that Plaintiff allegations that he was innocent in the crime could be proven by unquestionable evidence in their possession.

## SIXTH CAUSE OF ACTION

**(Monell 42 U.S.C. 1983: Claim Against Defendants City of Camden, City of Camden Police Department For The Action Of The CCPD)**

72.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 71 as is fully set forth herein.

73.   The foregoing violations of Plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendants, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged   criminal activities.

74.   Prior to Plaintiff's arrest, policymaking officials at the CCPD, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and

to the right of all criminal suspects and defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

(a) The use of single photographs shown to witnesses during an out of court identification procedure to suggest to the witness the person in the picture committed the crime.

(b) The determination of probable cause to make an arrest; and

(c) the continuing duty of police investigators to preserve and to make timely disclosures to the Prosecutor, during criminal investigations and prosecutors, of all material evidence or information favorable to a person suspected, accused or convicted of criminal conduct, including, but not limited to evidence of innocence, third party culpability, evidence that an identifying or prosecution witness is unreliable or lacks general credibility, evidence that a prosecution witness has made inconsistent statements about material facts, and evidence that a prosecution witness has a motive, bias or interest affecting his credibility.

(d) The use of excessive promises of rewards and inducements to jailhouse informants for their testimony in criminal trials despite warnings that jailhouse informants routinely fabricate stories to get out jail and must be used with caution.

75. With respect to the above paragraphs, prior to Plaintiff's arrest and the initiation of his prosecution in 2004/2005/2006, the CCPD provided no training at all on the best practices to prevent wrongful convictions including on the use of double-blind line-ups, and not to rely upon unreliable jailhouse informant testimony.

76. The aforesaid deliberate or de facto policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the Defendants City of Camden and City of Camden Police Department who knew or should have known):

(a) to a moral certainty that such policies, procedures, regulations, practices,

and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

(b) that such issues either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and

(c) that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

77.   The aforementioned policymaking officials had the knowledge and the notice alleged in the preceding paragraph based upon, among other circumstances:

(a) numerous judicial decisions of the United States Supreme Court, the United States Court of Appeals for the Third Circuit, the New Jersey Supreme Court, and the New Jersey Appellate Division, discussing the difficult issues that regularly arise under single photographic identifications suggestive procedure in nature, as well as the probable cause requirement of the Fourth and Fourteenth Amendments;

(b) Formal reports from the bar Association and others that informed the defendants that Jailhouse Informants routinely lie in criminal cases to save their own hide. Therefore, close caution and scrutiny must be used when employing such services in a criminal trial.

(c) Civil lawsuits and task force studies from previous wrongful convictions that identified the above as top causes in wrongful convictions and warned of the use of such tactics/strategies in criminal trials.

(d) The inherent obviousness of the need to train, supervise and discipline

police officers in such obligations to counteract the pressure on officers and the powerful incentives they have to close cases and to obtain arrests and convictions.

78. Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner (of his authorized delegates), has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including constitutional requirements governing the interrogation of witnesses, the initiation of criminal prosecutions and proper identification procedures to be utilized with witnesses, as well as the proper use of jailhouse informants.

79. The Police commissioner, personally and/or through his authorized delegates, at all relevant times had final authority, and constitutes a city policymaker for whom the City is liable, with respect to compliance by CCPD employees with the above-mentioned constitutional requirements.

80. During all times material to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

81. The aforesaid policies, procedures, regulations, practices and/or customs of Defendant City of Camden and Camden Police Department were collectively and individually a substantial factor in bringing about the aforesaid violations by the

Individual Police Defendants of Plaintiff's rights under the Constitution and laws of the United States.

82. By virtue of the foregoing, Defendant City of Camden and Camden Police Department are liable for having substantially caused the foregoing violations of Plaintiff's rights and his constitutional injuries.

## SEVENTH CAUSE OF ACTION

### (MONELL/42 U.S.C. 1983 CLAIM AGAINST DEFENDANT COUNTY OF CAMDEN FOR ACTIONS OF THE CAMDEN COUNTY PROSECUTOR OFFICE)

83. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 82 as is fully set forth herein.

84. At the time of Plaintiff's original prosecution, and continuing until the New Jersey Attorney Generals Office vacating the conviction and dismissing the indictment, the Camden County Prosecutor's Office, as a County agency, maintained a policy, custom and/or practice of deliberate indifference to violations by his employees of the constitutional rights of individuals who were investigated and criminally prosecuted in Camden County, including but not limited to, abuse of process, manufacturing of false evidence and testimony through improper inducement of witnesses, suggestive police identification procedures that result in unreliable identifications of innocent men and women and argument at trial ("the policy"). And covering up the same.

85.  The policy was consistently used and has continued to this day.

86. The policy permits, encourages, or acquiesces in the commission of, constitutional violations of the rights of suspects and defendants by prosecutors,

detective-investigators, and CCPD detectives working with the CCPO, particularly in high profile or serious cases where arrest and conviction is most desired by the office. The policy led directly to the violations of Plaintiff's constitutional rights before and during his trial, his wrongful conviction, and the subsequent cover-up of police and prosecutor's wrongdoing, which greatly prolonged Plaintiff's wrongful imprisonment and other damages.

87. More specifically, it was the policy of the prosecutor's office to directly encourage, or be indifferent to and thereby indirectly encourage, prosecutors, CCPO investigators, and CCPD detectives working with them to abuse lawful process to gain custody of vulnerable witnesses in order to induce them into giving inherently unreliable or false testimony favorable to the prosecution. The above law enforcement officials would use the following illegal tactics on witnesses:

(a) Shows single photographs in a highly suggestive manner in order to get witnesses to identify the person targeted by the CCPO and CCPD.

(b) Use of Jailhouse Informants to falsely testify under an inducement for their testimony, where they will receive substantial time reductions, for blaming others in false admissions to the crimes in which they were charged in order to convict.

88. It was the CCPO's policy as well to tolerate (and thereby encourage) violations of his Office's constitutional obligation to due process and fair trials, by use of unreliable jailhouse informants and suggestive identification procedures. This deliberate indifference to such violations created an "anything goes" atmosphere that caused such violations to continue, including in Plaintiff's case that caused his wrongful conviction to

occur.

89.    In this regard, prosecutors and investigators were permitted and/or encouraged to use evidence illegally obtained including suggestive police identification procedures and unreliable jailhouse informants to convict innocent people, including plaintiff.

90.    The CCPO had no employee handbook, manual, or other document setting forth any disciplinary process for such misconduct, or potential sanctions for them.

91.    A number of cases handled by Camden County Prosecutors Office during the time period of plaintiff's prosecution, the above policies and patterns of misconduct by Camden County Prosecutors staff and Mindy Mellits approval or toleration of such behavior.

92.    Despite knowing that single witness identifications, especially those of a single photographic identification procedure violates best practices and cause wrongful convictions. As well as the use of jailhouse informants has been known to cause wrongful convictions as well and proven to be unreliable. By the very nature of their incarceration men/women who are desperate would say or do anything in order to regain their freedom. Given an inducement to falsify, it is proven these jailhouse informants often fabricate to save their own hind and get released from prison at the expense of society. The supervisory and policymaking officers and officials of the Defendant County of Camden, or failed to take preventative or remedial measures to terminate, said policies, procedures, regulations, practices and/or customs, did not effectively instruct, train and/or supervise

their personnel with regard to the proper constitutional and statutory requirements in the exercise of their authority, had no employee handbook or other published practices, policies or procedures for investigating and disciplining prosecutors who had engaged in constitutional violations and did not discipline or otherwise properly supervise the individual personnel who engaged in such practices, but instead sanctioned or tolerated the policies, procedures, regulations, practices, and/or customs described above, with deliberate indifference to the effect of said policies, procedures, regulations, practices and/or customs upon the constitutional rights of residents and citizens of the City and the State of New York.

93.     The aforesaid policies, procedures, regulations, practices and/or customs of Defendant County of Camden were collectively and individually a substantial factor in bringing about the aforesaid violations of Plaintiff's rights under the Constitution and Laws of the United States and is causing his damages.

94.  Under the principles of municipal liability for federal civil rights violations, the Camden County Prosecutors (or his authorized delegates) has final managerial responsibility for training, instructing, supervising and disciplining attorneys and other employees in his office regarding their conduct in the prosecution of criminal matters, including, but not limited to, their obligation not to manufacture false or unreliable "evidence" not to abuse judicial process, or unreliable identifications made through suggestive police practices and tunnel vision, and to correct false or misleading evidence, testimony, and argument during pretrial, trial and post-trial proceedings.

95.  The  Camden  County  Prosecutor,  personally  and/or  through  his

authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision and discipline, with respect to his office's performance of its duties.

96.   The Camden County Prosecutors Office at all times relevant was and is an appointed officer of Camden County, and the office was and its funded out of the County's budget even though the appointment was and is made by the Governor.

97.   Furthermore, the Camden County Prosecutor's Office was and is designated a "local officer," rather than a "state officer". And, the County of Camden shall have liability for torts committed by County officers and employees, such as the Prosecutor and his assistants.

98.   The County of Camden Prosecutor, personally and/or through his authorized delegates, at all relevant times had final authority, and constituted a County policymaker for whom the County is liable, with respect to the above-mentioned areas.

99.   During all times material to this Complaint, the County of Camden, through its policymakers, owed a duty to the public at large and to Plaintiff, which such policymakers, intentionally breached, or to which they were deliberately indifferent, to implement policies, procedures, customs and practices sufficient to prevent, deter and avoid conduct by their subordinates violating the aforementioned constitutional rights own criminal suspects or defendants and of other members of the public.

100.   By virtue of the foregoing, Defendant County of Camden is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights

and his resultant injuries.

## **TENTH CAUSE OF ACTION**

### **(Negligent Hiring, Training and Supervision Under State Law; Defendants City of Camden and County of Camden)**

101.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 100 of this Complaint.

102.  By virtue of the foregoing, defendants City of Camden and County of Camden is liable to plaintiff because own its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the CCPO and/or the CCPD with regard to their aforementioned duties.

## **ELEVENTH CAUSE OF ACTION (STATE OF NEW JERSEY DEPARTMENT OF TREASURY)**

### **(Claim for Compensation Under The Mistaken Imprisonment Act, N.J.S.A. 52:4C-1, et seq.)**

103.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 102 of this Complaint.

104.  Plaintiff Taron Hill submits this Complaint for compensation under the MIA. See Exhibit B – Pending Verified Claim.

105.  Mr. Hill was convicted of a crime, to wit, the murders of Robin Battie and Tinesha Lewis, and subsequently sentenced to a term of 60 years. He was arrested on December 1, 2004 and convicted on March 13, 2007. He served roughly from December 1, 2004, until July 9, 2021, or approximately 16.5 years of his sentence.

106.  The State has conceded that Mr. Hill is innocent and was wrongfully convicted in their July 9, 2021, court filing when they conceded to a new trial and dismissed the indictment.

107.   Mr. Hill did not commit or suborn perjury, fabricate evidence, or by his own conduct cause or bring about his conviction. In fact, the evidence of innocence was procured   after trial in a motion for a new trial and by way of the Attorney General's Conviction Review Unit's investigation into Mr. Hill's wrongful conviction.

108.  Mr. Hill did not plead guilty to the crime; he was found guilty after a trial by jury.

109. The State, in its July 9, 2021, motion to the Camden County Superior Court conceded that there was clear and convincing evidence that Taron Hill was wrongfully convicted, was innocent and that his conviction was the result of a manifest injustice.

110. As a result of his wrongful conviction, Mr. Hill unlawfully served 16.5 years in prison.

## **DAMAGES DEMAND**

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

a. For compensatory damages of not less than $70 million;

b. For punitive damages against the individual Defendants of $100 million;

c. For reasonable attorneys' fees, together with costs and disbursements, pursuant to 42 U.S.C. 1988 and to the inherent powers of this Court;

d. For pre-judgment interest as allowed by law; and

e. For such other and further relief as this Court may seem just and proper.

Dated:  Forest Hills, New York
              June 7, 2022

Yours, *etc.*


____/s/___*Justin Bonus*_____
JUSTIN BONUS, ESQ. (018962011)
*Attorney for Plaintiff*
118-35 Queens Blvd
Suite 400
Forest Hills, NY 11375
Telephone: (347) 920-0160
Justin.bonus@gmail.com

## VERIFICATION

**TARON HILL**, the plaintiff in the above-captioned matter, affirms the following to be true under the penalties of perjury and pursuant to N.J. R. 5:4-2(c), N.J. R. 1:4-7, N.J.S.A. 52:4C-4:

I have read the annexed **VERIFIED COMPLAINT** and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters, I believe them to be true.  My belief, as to those matters therein not stated upon knowledge, is based upon speaking with my attorney and my experience, facts, records, and other pertinent information contained in my files.

Dated: _Morrisville_, N.C.
June _3_, 2022

_____

**TARON HILL**

## G.S. § 10B-41 NOTARIAL CERTIFICATE FOR ACKNOWLEDGMENT

WAKE County, North Carolina

I certify that the following person(s) personally appeared before me this day, each

acknowledging to me that he or she signed the foregoing document:

TARON ANTHONY HILL.

*Name(s) of principal(s)*

Date: 6-3-2022 .

(Official Seal)

_____
*Official Signature of Notary*

RITU SUKHIJA, Notary Public

*Notary's printed or typed name*

My commission expires: Nov 12, 2023

RITU SUKHIJA
NOTARY PUBLIC NORTH CAROLINA
WAKE COUNTY
MY COMMISSION EXPIRES NOV 12, 2023

**OPTIONAL**

This certificate is attached to a Verification doc , signed by TARON HILL

*Title/Type of Document*                              *Name of Principal Signer(s)*

on 6-3-2022 , and includes _____ pages.

*Date*                              *# of pages*